# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

PEGGY J. SUMMERS,

        Plaintiff,

vs.

MICHAEL J. ASTRUE,
Commissioner, Social Security
Administration,

        Defendant.

Case No. 10-CV-374-CVE-FHM

## REPORT AND RECOMMENDATION

Plaintiff, Peggy J. Summers, seeks judicial review of a decision of the Commissioner of the Social Security Administration denying Social Security disability benefits.[1] The matter has been referred to the undersigned United States Magistrate Judge for report and recommendation. The undersigned RECOMMENDS that the Commissioner's decision be AFFIRMED.

## Standard of Review

The role of the court in reviewing the decision of the Commissioner under 42 U.S.C. § 405(g) is limited to determining whether the record as a whole contains substantial evidence to support the decision and whether the correct legal standards were applied. *See Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1237 (10th Cir. 2001); *Winfrey v. Chater*, 92 F.3d 1017 (10th Cir. 1996); *Castellano v. Secretary of Health & Human Servs.*,

---

[1] Plaintiff's August 4, 2004, application for disability benefits was denied initially and on reconsideration. A hearing before Administrative Law Judge ("ALJ") George Gaffaney was held May 5, 2007. By decision dated July 13, 2007, the ALJ entered the findings that are the subject of this appeal. The Appeals Council denied Plaintiff's request for review on December 1, 2009. The decision of the Appeals Council represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

26 F.3d 1027, 1028 (10th Cir. 1994). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Casias v. Secretary of Health & Human Servs.,* 933 F.2d 799, 800 (10th Cir. 1991). Even if the court would have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. *Hamilton v. Secretary of Health & Human Servs.,* 961 F.2d 1495 (10th Cir. 1992).

## **Background**

Plaintiff was 44 years old at the time of alleged onset of disability and 48 at the time of the ALJ's decision. She has a general equivalency diploma and formerly worked as a janitor. She claims to have been unable to work since April 22, 2004, as a result of fibromyalgia, pseudo-seizures, depression, anxiety, asthma, gastroesophageal reflux disease, obesity, and hypertension.

## **The ALJ's Decision**

The ALJ determined that Plaintiff has the residual functional capacity (RFC) to lift 10 pounds occasionally and 5 pounds frequently, stand at least 2 hours in an 8-hour workday, sit at least 6 hours in an 8-hour workday. She can occasionally climb stairs, ladders, balance, stoop, kneel, crouch, and crawl. She is able to do simple, routine tasks and may frequently interact with the public, coworkers, and supervisors. The ALJ determined that Plaintiff is not able to perform her past relevant work. Based on the

testimony of the vocational expert, the ALJ determined that there are a significant number of jobs in the national economy that Plaintiff could perform with these limitations. The case was thus decided at step five of the five-step evaluative sequence for determining whether a claimant is disabled. *See Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (discussing five steps in detail).

### **Plaintiff's Allegations**

Plaintiff asserts that the ALJ erred in failing to apply the regulatory psychiatric review technique to assess her mental impairments and erred in finding that she could perform work.

### **Analysis**

Assessment of Mental Impairments

When there is evidence of a mental impairment that allegedly prevents a claimant from working, the ALJ must follow the procedure for evaluating mental impairments set forth in the regulations and is required to document the application of the procedure, known as the psychiatric review technique (PRT), in his decision. 20 C.F.R. §§ 404.1520a(e), 416.920a(e), *Carpenter v. Astrue*, 537 F.3d 1264, 1268 (10th Cir. 2008)(discussing application of the psychiatric review technique by the ALJ), *Cruse v. United States Dep't of Health & Human Servs.*, 49 F.3d 614, 617 (10th Cir. 1995) (same). The procedure for evaluating alleged mental impairments requires the ALJ to consider the effect of the mental impairment on four broad areas of functioning known as the "paragraph B" criteria: activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation of extended duration. *See* 20 C.F.R., Part 404, Subpart P,

Appendix 1, § 12.00 (C). There is no merit to Plaintiff's assertion that the ALJ failed to properly apply the technique described above.[2] The undersigned finds that the ALJ's analysis was thorough and complete and that it complied with the applicable legal standards.

In considering the "paragraph B" criteria, the ALJ found that Plaintiff has "no to mild" restriction in activities of daily living; mild difficulties in social functioning; mild difficulties in concentration, persistence or pace; and no episodes of decompensation. [R. 32]. The Commissioner's regulations provide that where mental impairments cause no more than mild limitations in the first three of the functional areas of the "paragraph B" criteria and there are no episodes of decompensation of extended duration, the claimant's mental limitation is generally considered non-severe. 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1). A non-severe impairment is one that causes no more than a minimal limitation on the ability to do work-related activities.

Plaintiff argues that the case should be remanded because, although the ALJ made "paragraph B" findings that the regulations suggest render her mental impairments non-severe, the ALJ found that her mental impairments are severe and included a mental-related limitation in the RFC assessment (restricting her to simple, routine tasks). According to Plaintiff, this is an inconsistency and the ALJ's decision lacks specific analysis which hampers the Court's review and requires remand. [Dkt. 15, p. 3]. Plaintiff cites *Fleetwood v. Barnhart*, 211 Fed. Appx. 736 (10th Cir. 2007) to support this argument.

---

[2] Plaintiff's statement that "the ALJ failed to state with what mental Listings he compared Plaintiff's mental impairments," [Dkt. 15, p. 2], is inaccurate. The ALJ stated he considered Listings 12.04, 12.06, and 12.08, which are all mental Listings. [R. 32].

4

In *Fleetwood* the ALJ found that the claimant had several mental limitations at step two but later in the decision found claimant's mental limitations were not severe. *Fleetwood* thus contained a direct inconsistency in the ALJ's findings. In the present case there is no such inconsistency. Here despite findings of mild impairments in the "paragraph B" criteria, the ALJ found at step two that Plaintiff had severe mental limitations. The ALJ also included mental limitations in the RFC. Thus this case is one that falls outside of the general rule expressed in 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1) that "paragraph B" findings of mild limitations will *generally,* but not always, result in a finding of no severe mental limitations. Regardless of the "paragraph B" findings of mild limitations, the ALJ found that Plaintiff's mental impairments did result in work-related limitations. The undersigned finds no error in that conclusion.

Furthermore, if Plaintiff were correct and there was an inconsistency between the ALJ's findings for the "paragraph B" criteria which indicate the absence of any mental impairments and the inclusion of work-related mental restrictions in the RFC, the undersigned fails to perceive the harm to Plaintiff. Plaintiff seems to be arguing that the case should be reversed because the ALJ included a mental limitation in the RFC which might not have been supported by the results of the severity screening function performed in the "paragraph B" analysis. *Fleetwood* provides no support for such a result.

Plaintiff also argues that the ALJ gave no explanation for how he found mental RFC limitations in light of the mild ratings. That argument is not supported by the record. The ALJ stated he considered the opinion of the state agency psychological consultant in determining the RFC, "but has also considered evidence not available to the State agency

5

medical consultant." [R. 32]. The state agency psychological consultant opinions were rendered on January 5, 2005, [R. 348], and on May 24, 2005, [R. 415].[3] In the decision the ALJ noted subsequently generated records from Behavioral Health Resources where in February 2007 Plaintiff's concentration was found to be "fair," and in mid-April 2007, her concentration and memory were mildly decreased. [R. 31, citing Exhibit B-22F, pages 3-19 found at R. 531-547]. The undersigned finds that the Behavior Health Resources records support the mental limitations in the RFC and that the ALJ adequately discussed the evidence in support of his RFC finding.

## Performance of Other Work

At step 5 of the evaluative sequence, after determining what Plaintiff can still do despite her impairments and that she cannot return to her past relevant work, the ALJ determines whether there exist other jobs in the economy that Plaintiff can perform with her particular set of restrictions. In this case the ALJ relied on the testimony of a vocational expert to determine the availability of such jobs. The ALJ posed a hypothetical question to the vocational expert which contained the same work-related restrictions and capabilities contained in the RFC finding and asked if there are jobs in the economy one with such restrictions could perform. [R. 967-68]. The vocational expert testified there were sedentary unskilled jobs, some examples being: a charge account clerk; a parimutuel ticket checker; and a government clerk. [R. 968]. The vocational expert provided Dictionary of Occupational Titles (DOT) identifying numbers for those jobs. The ALJ

---

[3] In a footnote, Plaintiff suggests that the ALJ erred by failing to refer to the second of the State agency psychological consultant's opinions. Both State agency experts found that Plaintiff's mental impairments appeared to be non-severe. Moreover, the ALJ is not required to discuss every piece of evidence, rather the record must demonstrate that the ALJ considered all the evidence. *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996).

6

asked: "These jobs are all consistent with descriptions in the Dictionary of Occupational Titles?" [R. 968]. The vocational expert responded: "Yes, they are." *Id*.

Plaintiff argues that the case should be reversed because the ALJ failed to elicit information from the vocational expert about whether the RFC restriction to simple routine tasks conflicted with the DOT description of these jobs which require a reasoning level of "3." Plaintiff asserts that in *Hackett v. Barnhart*, 395 F.3d 1169 (10th Cir. 2005) the Tenth Circuit stated that a limitation to simple and routine work tasks was inconsistent with the DOT's classification of a job as having a reasoning level of "3."[4] Plaintiff states that the ALJ also failed to comply with the Social Security Ruling (SSR) 00-4p which requires the ALJ to question the vocational expert about whether his or her testimony conflicts with the DOT and to obtain a reasonable explanation for any such conflict.

The *Hackett* Court did not rule that a DOT reasoning level three is necessarily inconsistent with a restriction to the performance of simple and routine tasks. Furthermore, *Hackett* did not present the same situation as this case. In *Hackett*, the ALJ stated that the vocational expert testified that his opinions did not directly correspond with the DOT and that the vocational expert explained the discrepancy by relying on his own education, experience, and observations of the jobs as they are actually performed. However, the record did not indicate that the vocational expert actually acknowledged a conflict with the DOT or that he offered any explanation. 395 F.3d at 1175. The Tenth Circuit stated that the RFC limitation to simple and routine work tasks "*seems inconsistent* with the demands

---

[4] Each DOT job description contains a description of the various attributes necessary to perform the job. Each job is assigned one of six reasoning levels, one is the lowest level and six is the highest. Reasoning Level "3" requires: "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations." *See* 1991 WL 671715 (GPO), DOT description 205.367-014.

7

of level three reasoning." *Id*. at 1176. [emphasis supplied]. Since level three reasoning might be inconsistent with the performance of simple and routine tasks and there was no testimony from the vocational expert about whether that was so, the *Hackett* Court remanded the case to "allow the ALJ to address the *apparent* conflict." *Id*. [emphasis supplied].

The record in the present case reflects that the ALJ did ask the vocational expert whether the jobs identified are consistent with the descriptions in the DOT. The vocational expert testified that they are. [R. 968]. That is what is required by *Hackett* and SSR 00-04p, 2000 WL 1898704 (SSA). Given the vocational expert's answer that her testimony was consistent with the DOT, and the absence of a pronouncement by the Tenth Circuit that DOT reasoning level three is, in fact, inconsistent with the performance of simple and routine tasks, the undersigned views Plaintiff's request for remand based on the DOT reasoning level to be an invitation for the court to reject the vocational expert's testimony and thereby invade the province of the ALJ. That is outside of the court's proper role–the court is not a vocational expert, nor is it the fact finder in this case.

Plaintiff also argues that the case should be remanded because she turned 50 years old while the case was pending before the Appeals Council and since she was limited to less than the full range of sedentary work, application of the Medical-Vocational Guidelines, 20 C.F.R. Subpart P, Appendix 2 (Grids)[5] to her case would result in a finding of disability.

---

[5] The grids are matrices of four factors– physical ability, age, education, and work experience. The grids set forth rules that identify whether jobs requiring specific combinations of those factors exist in significant numbers in the national economy. *Daniels v. Apfel*, 154 F.3d 1129, 1132 (10th Cir. 1998) (quoting *Heckler v. Campbell,* 461 U.S. 458, 461-62, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983). In certain circumstances, the grids provide a shortcut to determining whether a claimant can perform other work without the necessity of a vocational expert's testimony.

The matter under review by the Appeals Council was the ALJ's decision dated July 13, 2007. On the date of the ALJ's decision, Plaintiff was 48 years old and fell into the Grid age category of "younger individual age 45-49." Under the Grids, a person in that age category who has a limited education and has performed unskilled work, but is able to perform the full range of sedentary work is presumed to be not disabled. Pt. 404, Subpt. P, App. 2, Rule 201.18. According to Plaintiff, the rules applicable to those whose age placed them near the next highest age category should have been applied to her case by the Appeals Council. There is no merit to this contention.

The regulations provide that the Commissioner will not mechanically apply the age categories contained in the grids in what is known as a "borderline situation." "If you are within a few days to a few months of reaching an older age category, and using the older category would result in a determination or decision that your are disabled, we will consider whether to use the older age category after evaluating the overall impact of all the factors in your case." 20 C.F.R. § 404.1563(b). On the date of the hearing before the ALJ, Plaintiff was five days away from being 48 years old. On the date the ALJ's decision was issued, Plaintiff's age was 48 years and two months old. She was, therefore, at least one year and ten months short of the next age category. Plaintiff has not pointed to any cases construing that length of time to fall within the "borderline situation." 20 C.F.R. § 404.1563(b). The undersigned finds that Plaintiff was not within the "borderline situation" either on the date of the hearing before the ALJ or when the ALJ's decision was rendered.

Plaintiff has offered no authority to support her contention that the Appeals Council should have taken account of the passage of time while her case was awaiting review and applied rules regarding "borderline situations" to her case. Implementation of Plaintiff's

suggestion would require the Appeals Council to take into account events developing subsequent to the ALJ hearing which would be to perform an act outside of the Appeals Council's established role.

The relevant regulations define the role of the Appeals Council in reviewing administrative law judge hearing decisions:

> (a) The Appeals Council will review a case if –
>
> (1) There appears to be an abuse of discretion by the administrative law judge;
>
> (2) There is an error of law;
>
> (3) The action, findings or conclusions of the administrative law judge are not supported by substantial evidence; or
>
> (4) There is a broad policy or procedural issue that may affect the general public interest.
>
> (b) If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision. The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision. It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.

20 C.F.R. § 404.970. The restriction that the Appeals Council will consider new evidence submitted to it "only where it relates to the period on or before the date of the administrative law judge hearing decision" demonstrates that it is not appropriate for the Appeals Council to consider developments subsequent to the ALJ's decision.

**Conclusion**

The undersigned finds that the record contains substantial evidence supporting the ALJ's denial of benefits in this case, and that the ALJ applied the correct standards in evaluating the evidence. Therefore the undersigned United States Magistrate Judge RECOMMENDS that the Commissioner's denial of benefits be AFFIRMED.

In accordance with 28 U.S.C. §636(b) and Fed. R. Civ. P. 72(b)(2), a party may file specific written objections to this report and recommendation. Such specific written objections must be filed with the Clerk of the District Court for the Northern District of Oklahoma by June 28, 2011.

If specific written objections are timely filed, Fed.R.Civ.P. 72(b)(3) directs the district judge to:

> determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

See also 28 U.S.C. § 636(b)(1).

The Tenth Circuit has adopted a "firm waiver rule" which "provides that the failure to make timely objections to the magistrate's findings or recommendations waives appellate review of factual and legal questions." *United States v. One Parcel of Real Property*, 73 F.3d 1057, 1059 (10th Cir. 1996) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)). Only a timely specific objection will preserve an issue for de novo review by the district court or for appellate review.

DATED this 14th day of June, 2011.

FRANK H. McCARTHY
UNITED STATES MAGISTRATE JUDGE

11