UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

PEGGY J. SUMMERS, )
 )
        **Plaintiff,** )
 )
v. ) Case No. 10-CV-0374-CVE-FHM
 )
MICHAEL J. ASTRUE, )
Commissioner of the Social )
Security Administration, )
 )
        **Defendant.** )

## OPINION AND ORDER

Now before the Court is the Report and Recommendation (Dkt. # 22) of Magistrate Judge Frank H. McCarthy recommending that the Court affirm the Commissioner's decision to deny plaintiff's claim for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(i) and 423, and for supplemental security income (SSI) benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1382c(a)(3). Plaintiff has filed an objection to the report and recommendation and asks the Court to remand the case for further administrative proceedings. Dkt. # 23. Defendant has not responded to plaintiff's objection and the time to respond has expired.

## I.

Plaintiff Peggy J. Summers was 44 years old[1] on April 22, 2004, the alleged onset date of her disability.[2] Dkt. ## 15, at 1; 17, at 2. She completed seventh grade, and later obtained a General

---

[1] Plaintiff states that she was 46 as of that date, Dkt. # 15, at 1; based on her stated birthday, May 5, 1959, she was 44.

[2] Plaintiff initially alleged an onset date of January 23, 2001; she later amended it to April 22, 2004. At the hearing, she again adopted the 2001 date. However, based on plaintiff's prior applications for benefits, decided unfavorably on April 21, 2004, the ALJ determined that res judicata barred him from considering claims prior to April 22, 2004. Dkt. # 14, at 29.

Equivalency Diploma and enrolled in a community college. She did not complete a degree. Dkt. # 14-9, at 46. She was previously married, but divorced in 1986. Id. at 47. She has three grown children, but does not have a close relationship with any of them. Id. at 47. Her work history includes stints as a "custodian, fast food worker, and cook's helper." Dkt. # 15, at 1. She is currently homeless, and "suffers from a number of mental and physical impairments." Id. On August 9, 2004, Summers protectively filed a Title II application for a period of disability and disability insurance benefits, and a Title XVI application for supplemental security income (SSI). Dkt. # 14, at 29. The claims were denied initially on January 6, 2005, and upon reconsideration on May 25, 2005. Id. Thereafter, Summers filed a written request for hearing on June 2, 2005. On May 1, 2007, administrative law judge George Gaffaney (ALJ) held a hearing and plaintiff was represented by counsel at the hearing. Dkt. # 14-9, at 38.

At the hearing, plaintiff testified that she was four feet eleven and a half inches tall, and weighed 190 pounds. Id. at 42. She had been living with "[a]n old man, . . . Herbert Binge," for approximately six or seven months.[3] Id. at 44, 47. She characterized Binge as a friend for whom she performed household chores in exchange for room and board. Id. at 47. Plaintiff does not drive; she initially testified that she was not allowed to drive "because of [her] seizures," but, upon questioning from her attorney, admitted that her license had been suspended after she was involved in an accident and did not have proper insurance. Id. Plaintiff previously alternated between living in Missouri and Iowa, generally staying in a location approximately six months. Id. at 45. During that time, she was living with family, and attributed her frequent moves to her family not "want[ing] anything to do with [her] because [she was] not working or anything." Id. Plaintiff testified that she

---

[3] Plaintiff now states that she is homeless. Dkt. # 15, at 1.

was unable to perform previous jobs such as custodial work, housecleaning, and waitressing in her current condition. Id. at 49.

Plaintiff is on medication for her conditions, which she testified was effective in bringing them under control. Id. at 44. However, she also stated that she is unable to perform any substantial work, due to her physical and mental problems. Id. at 50. She has fibromyalgia, and regularly experiences pain in her back, neck, shoulders, and legs, brought on by bending, lifting, standing, pulling, raising her arms, or walking. Id. at 51-54. That pain generally lasts ten to fifteen minutes; she alleviates it by taking medication, sitting, rubbing the site of the pain, and/or occasional exercises. Id. at 52-53. She is able to stand only for five minutes at a time, and to walk only one to two blocks without pain. Id. at 54. In addition to fibromyalgia, plaintiff testified that she suffers from stress-induced rises in blood pressure, brought on by arguments around her. Id. at 55. She acknowledged that her high blood pressure is also the result of her being overweight. Id. She takes medication for that condition, but testified that her high blood pressure affects her ability to work because when she becomes stressed, she finds it difficult to concentrate, and makes mistakes. Id. at 56. To relieve the stress, she "go[es] for walks or . . . to where there's nobody around." Id. Plaintiff has suffered from asthma since 2002, and is on medication for that condition. Id. Her asthma attacks, which she testified are brought on by people arguing with her or by walking outside, occur two or three times a week. Id. She stated that she cannot work during an asthma attack, and that being at work affects her asthma because it subjects her to conditions that bring on her attacks, such heat exposure and arguments. Id.

Plaintiff also testified that she suffers from "seizures,"[4] and stated that they began in 2002, after she was involved in a car accident. Id. at 58-59. She has experienced "mini seizures" as often as two or three times a day, which do not last long; she stated that she rarely suffers from grand mal seizures.[5] Id. at 57-58. She does not know what brings on the seizures, but takes medication for them three times a day. Id. Plaintiff has trouble sleeping, and sleeps only three hours a night if not on medication. Id. at 60. She has also been diagnosed with restless leg syndrome, and takes medication for that condition. Id.

Plaintiff testified that she has suffered from depression since 2005, and is on medication for that condition as well. Id. at 60-61. She said that she feels depressed every day, a feeling she attributes to her lack of relationships with friends or family. Id. Depression affects her ability to work in that she is not "in the mood to [do] anything," and has trouble concentrating. Id. Plaintiff has experienced chest pains since 2002, and says that the pain occurs once or twice a month, and lasts fifteen to twenty minutes. Id. During those periods of pain, she is unable to work or perform household chores, and she occasionally goes to the hospital. Id. at 62. Doctors have never identified a cause of her chest pain. Id. Plaintiff testified that she can sit approximately 20 to 25 minutes at a time, can ride in a car continuously for 50 miles, and can sit or stand for ten or fifteen minutes.[6] She cannot engage in sustained activity, and has difficulty bending, kneeling, stooping, or squatting,

---

[4] Plaintiff stated that doctors in Missouri called them seizures, but that doctors in Iowa "just call them flustering and stuff like that." Dkt. # 14-9, at 57.

[5] When she does suffer from grand mal seizures, plaintiff stated that they last several days at a time. Dkt. # 14-9, at 58.

[6] Upon questioning by the ALJ about perceived inconsistencies in her testimony, plaintiff stated that the reason she could ride in a car longer than she could sit or stand was because she "sometimes lay[s] down" in the car. Dkt. # 14-9, at 63.

4

due to pain in her legs. Id. at 63. She also experiences back pain while pushing or pulling, although the degree of pain depends on the weight of the item. Id. at 64.

Plaintiff's hobbies are limited to "puzzle books" and watching television; she testified that, because of physical or mental limitations, she had given up hobbies such as "[her] computer," camping, embroidering, and gardening. Id. She does not engage in social activities. Id. For household chores, she is able to clean the kitchen, cook, and wash dishes, but is not able to make beds, vacuum, or do laundry. Id. at 64-65. Her typical day is spent "watching TV or sleeping." Id. at 65. She testified that she generally wakes up around 9:00 a.m., fixes breakfast, and then engages in her "normal routine" of sleeping or watching TV. She occasionally prepares an evening meal, and goes to bed around 10:00, when "[her] shows are off." Id. Plaintiff testified that she did not have medical insurance, and that she received her medications through the Department of Human Services in Indianola, Iowa. Id. at 65.

The ALJ called Vanessa May as a vocational expert (VE) to testify about the exertional requirements of plaintiff's past work and the availability of jobs in the marketplace that could be performed by a person with plaintiff's physical limitations. The ALJ asked a series of hypothetical questions to determine if plaintiff would be able to return to her past relevant work or if alternate jobs were available in sufficient numbers. Id. at 68. Assuming that person was limited to lifting ten pounds occasionally and five pounds frequently, sitting for six or more hours in an eight-hour workday, occasional non-exertional movement, occasional exposure to hazard, simple, routine tasks, and frequent rather than constant interaction with others, the VE eliminated plaintiff's past relevant work. Id. However, the VE testified that an individual of the same age, education, and work experience as plaintiff could, with those limitations, perform sedentary, unskilled jobs. Id. at 69.

5

As examples, she identified a charge account clerk, a parimutuel ticket checker, and a government clerk. Id. The VE testified that adding as a limitation the inability to sustain an eight-hour workday, there would be no job that the hypothetical individual could perform on a full-time, competitive basis. Id. Plaintiff's attorney asked the VE no additional questions. Id. at 70.

On July 13, 2007, the ALJ issued a written decision denying plaintiff's claim for disability, disability insurance, and SSI benefits. Dkt. # 14, at 26. The ALJ determined that plaintiff had not been under a disability within the meaning of the Social Security Act from April 22, 2004 through the date of the decision. Id. at 30. He found that plaintiff had the following "severe combination of impairments: fibromyalgia; pseudo-seizures; depression NOS; anxiety NOS; personality disorder NOS; hypertension; hypothyroidism; asthma; gastroesop[h]ageal reflux disease; [and] obesity," but that she did not have "an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1."[7] Id. at 31-32. Moreover, the ALJ found that plaintiff

> has the residual functional capacity to perform sedentary work except she can lift 10 pounds occasionally and 5 pounds frequently. She can stand at least 2 hours in an 8-hour workday. She can sit at least six hours in an 8-hour workday. She can occasionally climb stairs, ladders, balance, stoop, kneel, crouch, and crawl. She is able to do simple, routine tasks. She may frequently interact with the public, coworkers, and supervisors.

Id. at 32. The ALJ reviewed plaintiff's medical records in detail, including claims of chest pain, seizures, and depression, but found that she "improved significantly" with treatment, and that flares in her symptoms were attributable to a failure to take medication as directed. Id. at 33-34. The ALJ

---

[7] The finding that her impairments did not meet or medically equal one of the listed impairments was based on his finding that plaintiff has "no to mild" restrictions in activities of daily living, "mild" difficulties in social functioning, "mild" difficulties with regard to concentration, persistence, or pace, and no episodes of decompensation of extended duration.

deemed plaintiff's condition as it appeared on the medical record to be not "consistent with . . . allegations of impairments which in combination have been disabling." Id. The ALJ also concluded that plaintiff "ha[d] never received persistent treatment for any alleged mental problems," and that her "mental impairments, considered singly and in combination, d[id] not meet or medically equal the [requisite] criteria . . . ." Id. at 36. He found that inconsistencies in plaintiff's testimony undermined his willingness to credit fully her allegations of the existence, persistence, and intensity of symptoms and functional limitations. Id. at 37. Based on his consideration of the evidence, he arrived at the RFC, which he used in his determination of plaintiff's ability to perform jobs in the national economy. He relied on the testimony of the VE to support a finding that plaintiff was capable of making a successful adjustment to other work in the national economy. Id. Therefore, he determined that plaintiff was not disabled. Id.

Plaintiff timely filed a request for review with the Appeals Council, which was denied on December 1, 2009. Dkt. # 2, at 2. On June 11, 2010, plaintiff filed this case seeking judicial review of the Commissioner's denial of her request for benefits. Id. at 1. Plaintiff filed an opening brief asserting two arguments:

I. The ALJ erred in failing to app[ly] the regulatory "special technique" to properly assess Plaintiff's mental impairments.

II. The ALJ erred in finding Plaintiff could perform other work.

Dkt. # 15, at 1. The matter was referred to a magistrate judge for a report and recommendation, and the magistrate judge recommended that the Commissioner's decision be affirmed. Dkt. # 22. Plaintiff filed an objection to the report and recommendation in which she renewed the two issues raised in her opening brief. Dkt. # 23. Defendant has not responded to plaintiff's objection to the report and recommendation, and the time to respond has expired.

**II.**

Without consent of the parties, the Court may refer any pretrial matter dispositive of a claim to a magistrate judge for a report and recommendation. However, the parties may object to the magistrate judge's recommendation within 14 days of service of the recommendation. Schrader v. Fred A. Ray, M.D., P.C., 296 F.3d 968, 975 (10th Cir. 2002); Vega v. Suthers, 195 F.3d 573, 579 (10th Cir. 1999). The Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). The Court may accept, reject, or modify the report and recommendation of the magistrate judge in whole or in part. Fed. R. Civ. P. 72(b).

**III.**

Plaintiff objects to the magistrate judge's report and recommendation on the grounds that the magistrate judge failed to apply the correct legal standards in affirming the ALJ's findings. Dkt. # 23, at 1, 5. The Social Security Administration has established a five-step process to review claims for disability benefits. See 20 C.F.R. § 404.1520. The Tenth Circuit has outlined the five step process:

> Step one requires the agency to determine whether a claimant is "presently engaged in substantial gainful activity." [Allen v. Barnhardt, 357 F.3d 1140, 1142 (10th Cir. 2004)]. If not, the agency proceeds to consider, at step two, whether a claimant has "a medically severe impairment or impairments." Id. An impairment is severe under the applicable regulations if it significantly limits a claimant's physical or mental ability to perform basic work activities. See 20 C.F.R. § 404.1521. At step three, the ALJ considers whether a claimant's medically severe impairments are equivalent to a condition "listed in the appendix of the relevant disability regulation." Allen, 357 F.3d at 1142. If a claimant's impairments are not equivalent to a listed impairment, the ALJ must consider, at step four, whether a claimant's impairments prevent her from performing her past relevant work. See id. Even if a claimant is so impaired, the agency considers, at step five, whether she possesses the sufficient residual functional capability to perform other work in the national economy. See id.

Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).

"In addition to the five-step analysis, the regulations require application of a special technique at the second and third steps of the five-step framework." Petrie v. Astrue, 412 F. App'x 401, 408 (2d Cir. 2011)(unpublished)[8](internal quotations omitted); see also Carpenter v. Astrue, 537 F.3d 1264, 1268 (10th Cir. 2008); 20 C.F.R. § 1420a(a). "This technique requires a reviewing authority to determine first whether the claimant has a medically determinable mental impairment." Petrie, 412 F. App'x at 408 (internal quotations omitted). "If the claimant is found to have such an impairment, the reviewing authority must rate the degree of functional limitation resulting from the impairment(s) in accordance with . . . four broad functional areas." Id. "The areas are: (1) activities of daily living; (2) social functioning; (3) concentration, persistence or pace; and (4) episodes of decompensation." Id. Each of the first three categories is rated on a scale of "none, mild, moderate, marked, and extreme." Id. The fourth category is rated on a scale of "none, one or two, three, four or more." Id. If the degree of limitation in the first three functional areas is "none" or "mild," and no episodes of decompensation are identified, the reviewing authority "will generally conclude that [the claimant's] impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities." 20 C.F.R. § 1420a(d)(1). "If the claimant's mental impairment is severe, then the reviewing authority must compare the relevant medical findings and the functional limitation ratings to the criteria of listed mental disorders to determine whether the impairment meets or is equivalent in severity to any listed mental

---

[8] Unpublished decisions are not precedential, but may be cited for their persuasive value. See Fed. R. App. 32.1: 10th Cir. R. 32.1.

9

disorder." Petrie, 412 F. App'x at 408. "If yes, then the claimant is disabled. If not, the reviewing authority must then assess the claimant's [RFC]."

The ALJ issued a written decision that was reviewed by the Appeals Council, which is a final decision by an administrative agency. Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008). The Court may not reweigh the evidence or substitute its judgment for that of the ALJ but, instead, reviews the record to determine if the ALJ applied the correct legal standard and if his decision is supported by substantial evidence. Id. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." O'Dell v. Shalala, 44 F.3d 855, 858 (10th Cir. 1994). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." Hamlin v. Barnhart, 365 F.3d 1208, 1214 (10th Cir. 2004). The Court must meticulously examine the record as a whole and consider any evidence that detracts from the Commissioner's decision. Washington v. Shalala, 37 F.3d 1437, 1439 (10th Cir. 1994).

The magistrate judge acknowledged the ALJ's finding at step two of the "special technique" that plaintiff had a "severe combination of impairments" but that she had, at most, "mild" difficulties in the four broad functional areas under the step three analysis. However, he found no inconsistency; instead, he concluded that the case was one that fell outside the general rule that findings of mild limitations will generally result in a finding of no severe mental limitations. Dkt. # 22, at 5. And he noted that even if the ALJ had failed to properly explain the inconsistency, any error was harmless. The magistrate judge also found that the ALJ adequately discussed the mental limitations contained in plaintiff's RFC, and that the state medical consultant opinions and Behavioral Health Resources (BHR) records upon which he relied provided sufficient evidence for

10

the finding. Plaintiff argues that the magistrate judge failed to apply the correct legal standards in affirming the ALJ's assessment of her limitations and explanation of the RFC. Dkt. # 23, at 1, 5. Specifically, she claims that the ALJ made inconsistent findings with regard to her abilities, and that he failed to properly assess and explain her RFC limitations.

As plaintiff argues, there is an unexplained disconnect between the ALJ's finding of only mild limitations at step three and his statement that plaintiff suffered from a severe combination of impairments at step two. See 20 C.F.R. §§ 404.1520a(d)(1)0). Plaintiff claims that Fleetwood v. Barnhart, 211 F. App'x 736 (10th Cir. 2007), requires reversal on that ground. However, although the Court does find that the ALJ failed to explain this seeming inconsistency, any such inconsistency is harmless "where the ALJ reaches the proper conclusion that benefits cannot be denied conclusively at step two, and proceeds to the next step of the evaluation sequence." Carpenter, 537 F.3d at 1267. Therefore, the Court will not remand on that ground.

Plaintiff also takes issue with the ALJ's assesment of her RFC. She claims that the ALJ did not provide the requisite discussion of how the medical record supports her mental RFC, and that he failed to consider evidence on the record that should have been included in that RFC. The ALJ assessed plaintiff's condition based on the reports from state medical consultants, complaints about her symptoms, and other information on the record. With regard to her mental state, he found that plaintiff "never received persistent treatment for any alleged mental problems." He considered plaintiff's February 2007 evaluation at Behavioral Health Resources (BHR), and cited the BHR findings that plaintiff's concentration was fair, her memory acceptable, and her calculations and grooming adequate. Dkt. # 14, at 35. Finally, he noted that, as of mid-April 2007, plaintiff alleged no problem with anxiety, her concentration and memory were mildly decreased, and her energy was

11

moderately decreased. Id. He then proceeded to detail his findings regarding plaintiff's limitation categories: "no to mild" restrictions in "daily living;" "mild" difficulties with "social functioning;" "mild" difficulties with "concentration, persistence, and pace;" and no episodes of decompensation. Based on that and other information regarding her treatment history, the ALJ concluded that plaintiff's mental impairments did not meet or medically equal the criteria of listings 12.04 (affective disorders), 12.06 (anxiety related disorders), or 12.08 (personality disorders), and determined plaintiff's RFC. He did not explain specifically how those limitations were met by her restriction to "simple, routine" tasks.

The ALJ is "not required to discuss every piece of evidence" when reviewing a claim for benefits. Clifton v. Chater, 79 F.3d 1007, 1009-10 (10th Cir. 1996). He is, however, required to "discuss the uncontroverted evidence he [does] not [ ] rely upon, as well as the significantly probative evidence he rejects." Id. at 1010; cf. McDaniel v. Astrue, No. CIV. 07-811-D, 2008 WL 4858272, at * 6 (W.D. Okla. Nov. 10, 2008)(affirming Commissioner's denial of benefits where Commissioner noted that the diagnosis of major depressive disorder was inconsistent with other information in the record, and that plaintiff's failure to remedy that disorder suggested that it was "caused by situational difficulties" and was "transient or intermittent"). Moreover, "[t]he ALJ is not entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability." Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004).

The Court has independently reviewed the medical evidence in the administrative record and finds some support for plaintiff's claim that the ALJ failed to consider all probative evidence regarding her mental limitations. The statement that plaintiff never received persistent treatment for mental problems is a reasonable characterization of the record, as it appears that she sought

12

treatment for depression only in July 2004, March 2005, and February 2007. Dkt. # 14-3, at 11, 87; 14-5, at 32. However, plaintiff was treated several times for stress-induced seizures, Dkt. # 14-4, at 35, 43, and was diagnosed with depression in July 2005. Dkt. # 14-4, at 62. More importantly, in February 2007, only a few months before her hearing before the ALJ, the BHR report found that plaintiff had many symptoms signaling a "major depressive episode," as well as "[a] long history of major depressive symptoms," "marginal functioning," "inadequate and dependent personality traits, and "major trust issues, with possible [post-traumatic stress disorder (PTSD)]." Dkt. # 14-5, at 40, 42. Plaintiff was diagnosed with "major depression, recurrent," and assessed a GAF score of 50.[9] Id. at 42. Her condition was identified as chronic. Id. Those conditions were not part of the analyses by the state consultants relied upon by the ALJ, which were completed in 2005.[10]

A GAF "score of 41-50 indicates serious symptoms . . . or any serious impairment in social, occupational or school functioning." Eden v. Barnhart, 109 F. App'x 311, 314 (10th Cir. 2004)(unpublished).[11] That score, "without evidence that it impaired [plaintiff's] ability to work, does not establish an impairment." Camp v. Barnhart, 103 F. App'x 352, 354 (10th Cir. 2004)(unpublished).[12] However, "[a] GAF score of fifty or less . . . does suggest an inability to keep a job," and should not be ignored. Lee v. Barnhart, 117 F. App'x 674, 678 (10th Cir.

---

[9] Plaintiff's statement that her GAF score was assessed to be 30, Dkt. # 23, at 4, is inaccurate.

[10] The BHR report noted that plaintiff's symptoms had "become more pronounced since 2005," following the death of her mother. Dkt. # 14-5, at 33.

[11] Unpublished decisions are not precedential, but may be cited for their persuasive value. See Fed. R. App. 32.1; 10th Cir. R. 32.1.

[12] Unpublished decisions are not precedential, but may be cited for their persuasive value. See Fed. R. App. 32.1; 10th Cir. R. 32.1.

2004)(unpublished).[13] Similarly, a possible diagnosis of PTSD must be analyzed in the context of severity determinations and creation of a plaintiff's RFC. See Nguyen v. Astrue, No. 06-1180 MLB, 2007 WL 1531518, at * 5 (D. Kan. May 16, 2007). The ALJ noted the BHR report, but relied on it only for its positive assessments of plaintiff. And his decision neither addresses his findings as to any limitations reflected by the GAF levels, possible PTSD, or instances of major depression, nor provides an explanation for his failure to credit those diagnoses in the report.

The Court has reviewed the magistrate judge's report and recommendation, and plaintiff's objection to the report and recommendation. The Court agrees with the magistrate judge that it is possible that the ALJ's RFC properly incorporated all conditions diagnosed in the BHR report. However, post-hoc attempts to supply reasons for an ALJ's decision are improper, and where the language of an ALJ's decision is ambiguous, remand is required. Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004); Bond v. Astrue, No. CIV-10-452-F, 2011 WL 2532967, at * 6 (W.D. Okla. May 26, 2011). Therefore, the case must be remanded for further administrative proceedings. On remand, the ALJ should make clear his consideration of all uncontroverted information in the medical records and the weight he assigns to it. Because any change to the ALJ's findings has the potential to alter his analysis, the Court does not consider plaintiff's challenge to the ALJ's finding regarding other work she could perform, or her argument that the ALJ's consideration of her age was in error.

---

[13] Unpublished decisions are not precedential, but may be cited for their persuasive value. See Fed. R. App. 32.1; 10th Cir. R. 32.1.

**IT IS THEREFORE ORDERED** that the report and recommendation (Dkt. # 22) is **rejected**. The Commissioner's decision to deny plaintiff's claim for benefits is **reversed** and this case is **remanded** for further administrative proceedings. A separate judgment is entered herewith.

**DATED** this 21st day of July, 2011.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT